# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| In Re Administrative Subpoenas to Children's Hospitals | Case No.: _____ |

**DECLARATION OF PARENT L.L.**

1. I am the mother of my 17-year-old daughter, who is transgender.

2. My child first began receiving care at Children's National Hospital ("CNH") in approximately 2016. Her first appointment with CNH's Gender Development Program was in approximately 2021.

3. My child's care at CNH included consultation and evaluation through the Gender Development Program. She received a puberty blocking implant in approximately 2022 and began hormone replacement therapy in approximately 2023.

4. Over the years, my child and our family interacted with many CNH providers, including physicians, pediatric specialists, an OBGYN, a pediatric endocrinologist, psychiatric providers, psychologists, nurses, and other staff. My child continues to be seen by psychologists. The care she received at CNH was excellent and extremely helpful to my child's well-being.

5. We also communicated with CNH outside in-person visits, including through the patient portal. Sensitive information about my child's care was discussed through those communications.

6. In order for CNH to treat my child appropriately, I provided everything I thought could help them understand her needs. That included information about her physical health, mental health, gender identity, school records, development, and family circumstances.

7. Some of the most sensitive information in my child's records concerns a severe mental health crisis. My child was hospitalized in 2021, and CNH has records relating to residential mental health treatment. Those records are deeply private.

8. My child also spoke with CNH providers privately, outside my presence. Privacy was fundamental to her ability to do that. My daughter would never have imagined that what she shared with her medical providers could later be disclosed to government lawyers.

9. My child takes time to trust providers. That made the confidentiality of CNH's care especially important. We relied on the understanding that her conversations with providers and her medical records would remain within the medical-care setting.

10. I would never have taken my child to CNH for this care if I had known that her medical records could later be disclosed to government lawyers or investigators who are not part of her medical team.

11. The possibility that my child's medical records could be disclosed to the government is terrifying. I do not understand why the government would need names, addresses, or Social Security numbers of children who received gender-related care.

12. I am extremely concerned that the government is trying to create a list of children who received gender care and families who supported that care. I fear that such information could be used to target families, accuse parents of child abuse, cut off care, or force transgender children to de-transition.

13. I am a federal employee, and I am worried about retaliation in my job if the government learns that I sought gender-related medical care for my child. I fear being fired or otherwise punished for helping my child obtain the care she needs.

14. Disclosure would be especially dangerous for my child because she has a history of suicidal ideation. I am deeply worried that learning her private records were given to the government could be triggering and harmful to her mental health.

15. Disclosure would also affect my child's ability to trust doctors in the future. Because it already takes her time to trust providers, turning over her records would make it even harder for her to speak honestly with the medical professionals responsible for her care.

16. Disclosure would damage my own trust in CNH and in the medical system. CNH has helped my child tremendously. But if CNH were required to turn over these records, I do not know how we could trust CNH in the future with private information.

17. I do not believe redacting names would protect my child's privacy. My child has a congenital birth condition, and there are not many children receiving transgender healthcare who also have that condition. Even without names, that information could make my child very easy to identify.

18. I am also concerned about our names being publicly linked to this case. Public identification could expose my child to harassment at school and could create risks to our safety.

19. I would not be willing to participate in this litigation under my real name. I am worried about being targeted, losing my job as a federal employee, and exposing my family to threats, physical harm, or worse.

20. What I want most is for my child to live as her authentic self and achieve all she is capable of without fear of government harassment or scrutiny.

21. For all these reasons, I strongly object to my child's medical records being disclosed to the government.

22. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Parent L.L.**

Dated: 5/6/2026